■  JERRY GILDEN SALES CORP., Respondent, v. HENRY ROSENFELD, INC., Appellant.

*Per Curiam.* Plaintiff, a factor, sued on a written guarantee of accounts theretofore assigned by Jerry Gilden Fashions, Inc. (hereinafter Fashions) to the plaintiff. The guarantee was given by the sole stockholder of Fashions and was part of an extensive settlement which was designed to settle the account of Fashions with the plaintiff. At the close of the testimony the court directed a verdict for $29,903.37 for the plaintiff.

The guarantee was executed on July 2, 1963, as a part of the over-all settlement. It purports to guarantee all the accounts theretofore assigned to plaintiff except those uncollectible by virtue of financial inability of the debtor.

Three items are in dispute in the calculation of the total of unpaid accounts. The first relates to differences arising from a determination of what accounts were unpaid due to financial inability. The court accepted a figure conceded by the plaintiff as defendant offered no proof to support its own contentions. There is no serious dispute as to the correctness of this determination.

The second item is the most substantial, amounting to $24,368.37. This is a total of two figures not separated in the record. The greater part of it arose from invoices assigned to plaintiff by Fashions, which invoices the buyers were slow in paying. When these invoices were assigned to plaintiff, plaintiff

first deducted 8%, the trade discount, and then advanced 85% of the remainder to Fashions. When the invoices were not paid at maturity, plaintiff charged back the advance against these accounts to Fashions. Later the customers paid and plaintiff credited these payments to Fashion's account. The balance of this sum was made up by instances where the customer failed to take advantage of the 8% trade discount so that plaintiff collected an excess over its advance. In June, 1963, Fashions had a credit with plaintiff resulting from these transactions in the said sum, $24,368.37. Defendant claims that this credit to Fashions accounts for the discrepancy between the figure of $73,000 stated in the guarantee as the approximate amount of the outstanding bills and the actual amount of about $100,000; and defendant further claims that this is an indication that this sum ($24,000) was to be used to guarantee the outstanding accounts, to that extent reducing defendant's liability. The court, we believe correctly, refused to draw that conclusion. The main transaction was a settlement of the large indebtedness owed by Fashions to plaintiff. The terms of that settlement do not appear in the record but whatever they might have been this credit which Fashions had was, or should have been, involved in the settlement. The guarantee sued upon was merely one facet in the settlement involving a third party. That party's obligation derives solely from that instrument and is not affected by what may have been the situation between plaintiff and Fashions. A different situation would have been presented if defendant was guaranteeing obligations of Fashions to the plaintiff. What it was guaranteeing was obligations of debtors to Fashions.

The last item, amounting to $9,345.80, consists of accounts assigned by Fashions subsequent to the date of the guarantee. Plaintiff contends that these accounts were assigned pursuant to a letter agreement of even date with the guarantee by which Fashions agreed to assign additional accounts in the total sum of $8,597.14. The difficulty with plaintiff's position is twofold. First, while the letter states that the accounts were "simultaneously" assigned, it is clear that they were not, and could not have been. Actually, no accounts were assigned until over a month later and there is no proof that these accounts were even in existence at the time of the closing. Secondly, there is absolutely no proof that the accounts assigned in August were assigned pursuant to the letter agreement, or even in the regular course of business of the factor. An effort made to establish this was abortive. It would follow that there was a failure of proof that these accounts were guaranteed by either the letter or the spirit of the guarantee. However, defendant is not entitled to a reduction for the total of these after-assigned accounts.

The reason for this is as follows: Defendant's indebtedness was calculated by deducting from the total amount of the assigned accounts the amounts collected by plaintiff against these accounts, and deducting from this remainder the amount uncollectible by virtue of financial inability of the account debtors. The amount paid by the debtors was $71,791.47 and for this amount defendant received credit. But included in this sum was $7,833.69 paid by the debtors on the $9,345.80 of accounts assigned after execution of the guarantee. If the accounts assigned after the guarantee are to be deducted from defendant's obligation, so should the amounts paid on those accounts be deducted from the total collections in which they have been included. Giving credit to both factors, defendant would be entitled to a deduction in the verdict directed of $1,512.11.

The judgment should be modified, on the law and on the facts, by reducing the verdict to $28,391.26, with appropriate interest, and, as so modified, affirmed, with costs and disbursements to respondent.

Botein, P. J. (dissenting). The pertinent part of the guarantee which defendant gave reads as follows: "Henry Rosenfeld, Inc. guarantees to Sales Corp. the payment of all the accounts receivable assigned to Sales Corp. by Jerry Gilden Fashions, Inc. except for the nonpayment of said accounts receivable by reason of the financial inability of said account debtors to pay the same. Henry Rosenfeld, Inc. acknowledges that it has examined statements of Sales Corp. indicating that the accounts receivable assigned to it referred to above aggregate approximately $73,000 as of June 1, 1963."

Plaintiff's comptroller, Philip Fine, testified that on June 1, 1963 the net debit balance due plaintiff was $75,524.07. This figure was arrived at by deducting various credit items from the approximately $100,000 of assigned accounts receivable. Surely, it cannot be said that $100,000 is "approximately $73,000" as a matter of law, and I should think a jury could reasonably find that the quoted words were intended to refer to the figure of $75,524.07. Put otherwise, a jury could find, as defendant's president testified, that the parties intended a guarantee of defendant's net debit balance.

The facts concerning the origin and disposition of the credit items tend to support defendant's contention that it was to be entitled to their benefit. Fine testified, "These credit balances arise from the fact that very frequently customers, in making payments, do not deduct credits which had been issued by the dress manufacturer, or maybe as a result of an overpayment, or a payment which is not clearly indicated as to what it covers." Plaintiff's position is that if an assigned account receivable is overpaid by the assignor's customer, thus creating a credit in favor of the customer, and if the customer does not ask for a refund of the overpayment, then it may be retained by the assignee. Thus in the present case, credit items in the amount of $2,247.03 were claimed by customers, and at the end of the year 1963 the balance then remaining unclaimed, $24,368.37, was written off and taken into plaintiff's profit and loss account as income. The consequence is that, on plaintiff's interpretation of the guarantee, it will ultimately have received not only payment of the gross receivables covered by the guarantee but will be $24,368.37 additionally in pocket, subject to the possibility that customers may one day demand return of their overpayments — a possibility deemed so remote that the overpayments were written off as no longer credits.

Regarding plaintiff's practice with respect to the credits, Fine said, "I have never worked for any other factors but I do understand that this is a part of their income." The jury may or may not have been impressed by this guarded testimony as to custom, and, even if impressed, jurors might still have asked themselves, why, if it was advisable to warn defendant in the guarantee agreement of the approximate amount for which it was committing itself, the amount inserted should have been so close to the balance after credits and so far from the balance before credits. It must be kept in mind that this appeal is from a directed verdict.

Accordingly, I believe the judgment below should be reversed and a new trial ordered.

Eager, Steuer and Tilzer, JJ., concur in *Per Curiam* opinion; Botein, P. J., dissents in an opinion in which Stevens, J., concurs.

Judgment modified, on the law and on the facts, by reducing the verdict to $28,391.26, with appropriate interest, and, as so modified, affirmed. with $50 costs and disbursements to respondent.

Settle order on notice.